UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YVONNE KLIEFORTH,

    Plaintiff,

v.                                    Case No. 8:18-cv-1906-T-SPF

ANDREW M. SAUL,
Commissioner of the Social
Security Administration,[1]

    Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.    Procedural Background**

Plaintiff filed an application for a period of disability and DIB (Tr. 66, 178-79, 180-83). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 12). Plaintiff then requested an administrative hearing (Tr. 95-98). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 31-55). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not

---

[1] Andrew M. Saul became Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Acting Commissioner Nancy A. Berryhill as Defendant in this suit.

disabled and accordingly denied Plaintiff's claims for benefits (Tr. 12-24). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1959, claimed disability beginning November 21, 2014 (Tr. 178). Plaintiff has some college but had not graduated as of the hearing[2] (Tr. 35, 200). Plaintiff's past relevant work experience included work as a customer service representative, order clerk, and accounting clerk (Tr. 23). Plaintiff alleged disability due to diabetes, arthritis, back/neck injury, and depression/anxiety (Tr. 199).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 20, 2019, and had not engaged in substantial gainful activity since November 21, 2014, the alleged onset date (Tr. 14). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: hypertension, disorders of spine, right hip osteoarthritis, fibromyalgia, chronic obstructive pulmonary disease (COPD), obesity, and diabetes mellitus (Tr. 14). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18). The ALJ then concluded that Plaintiff retained a residual functional capacity

---

[2] At the time of the March 2017 hearing, Plaintiff was enrolled in two classes and testified that she anticipated she would earn a college degree at the end of the semester (Tr. 35, 49).

("RFC") to perform sedentary work with the following limitations: occasionally overhead reach with her left non-dominant upper extremity; frequently handle and finger bilaterally; occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; frequently stoop, balance, kneel, crouch, and crawl; frequent exposure to fumes, odors, dusts, gases, and poor ventilation; and occasional exposure to hazards such as moving mechanical parts of equipment, tools or machinery (Tr. 18-19). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 19).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could perform her past relevant work (Tr. 23). Accordingly, the ALJ found Plaintiff not disabled (Tr. 24).

### III. Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological

abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305

U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**IV. Analysis**

Plaintiff argues here that the ALJ erred by failing to properly assess Plaintiff's mental and physical impairments and their effects on the RFC as well erred by failing to properly evaluate the medical opinions. For the reasons that follow, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

**A.** Whether the ALJ properly assessed the mental impairments and their effect on the RFC

Plaintiff argues that the ALJ failed to consider any effects of her mental impairments when determining the RFC (Doc. 24 at 29). Plaintiff alleges that the ALJ

did not consider all of the evidence regarding Plaintiff's mental impairments and points to the ALJ's "perception" that all of Plaintiff's mental status examinations ("MSEs") were normal (Doc. 24 at 29 (citing Tr. 17)). Plaintiff goes on to illustrate that not all of Plaintiff's MSEs were normal by pointing to an MSE on March 30, 2016, in which the ARNP assessed that Plaintiff had dysphoric mood and anxious affect (citing Tr. 1034). Plaintiff further asserts that three of six MSE assessments, which occurred during therapy sessions from April 15, 2016 through June 17, 2016, were normal while the other three show problems, with two of those three showing very significant problems. Defendant counters that the record evidence as a whole provides substantial evidence in support of the ALJ's evaluation of Plaintiff's mental impairments.

When evaluating the severity of a claimant's mental impairment, the regulations direct an ALJ to use a special Psychiatric Review Technique (PRT). *See* 20 C.F.R. § 404.1520a. Using this technique, the ALJ must decide if a claimant's mental impairments cause limitations in one of four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). Additionally, the ALJ must complete a PRT form and append it to her decision or incorporate its mode of analysis into her findings and conclusions; failure to do so requires remand. *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005).

Here, the ALJ properly evaluated Plaintiff's mental impairments using the PRT and explicitly incorporated it into her decision finding mild limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining

6

pace, but no limitations in interacting with others or in her ability to adapt or manage herself (Tr. 17-18). The ALJ considered each of the four areas of mental functioning based on the relevant evidence and found Plaintiff's medically determinable mental impairments were nonsevere (Tr. 17-18). *See Stone v. Comm'r of Soc. Sec.*, 586 F. App'x 505, 512 (11th Cir. 2014)[3] (concluding that substantial evidence supported the ALJ's findings at step two that claimant had no severe mental impairments where evidence showed that claimant had no more than mild restrictions in the four functional areas).

The severity or degree of functional limitation is based on "the extent to which [a claimant's] impairment(s) interferes with [a claimant's] ability to function independently, appropriately, effectively, and *on a sustained basis*." 20 C.F.R. § 404.1520a(c)(2) (emphasis added). Under this analysis, the adjudicator will consider factors such as "the quality and level of [a claimant's] overall functional performance, any episodic limitations, the amount of supervision or assistance [a claimant] require[s], and the settings in which [a claimant is] able to function." *Id.* Furthermore, assessing the severity of a claimant's mental impairment(s) requires the adjudicator "to obtain a longitudinal picture" of such limitation(s). 20 C.F.R. § 404.1520a(c)(1). By its own terms, the regulations require the adjudicator to determine severity based on viewing any mental impairments over time.

The ALJ's analysis reflects the longitudinal picture of Plaintiff's mental limitations. The ALJ's discussion of Plaintiff's mental impairments begins with January 2016, when Plaintiff was prescribed Celexa for depressive symptoms, but notes that, at the time,

---

[3] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

7

Plaintiff exhibited appropriate mood and affect (Tr. 16). *See* SSR 96-8p, 1996 WL 374184, at *5 (identifying medical history as relevant evidence). The ALJ also considered the fact that Plaintiff was Baker Acted on March 3, 2016, due to suicidal thoughts (Tr. 16). Plaintiff reported that she had no history of psychiatric treatment until recently and was feeling overwhelmed by her financial and medical situation. She, however, was able to contract for safety, and she was not prescribed any psychiatric medication (Tr. 16). The decision discusses the fact that Plaintiff remained hospitalized voluntarily while waiting for placement in a shelter (Tr. 17). The ALJ noted that during her 18-day stay, Plaintiff was friendly, cooperative, and calm (Tr. 17). Moreover, at discharge, Plaintiff's speech, eye contact, appetite, and sleep were within normal limits, she denied hallucinations or suicidal ideations, her thoughts were logical and linear, and she reported her mood as good (Tr. 17).

The ALJ then discussed Plaintiff's counseling sessions that began April 15, 2016, and, although the ALJ did not discuss each of the six counseling sessions, the ALJ noted that at her last session in June 2016, Plaintiff had a euthymic mood, a stable affect, and was pleasant and cooperative (Tr. 17). The ALJ explicitly acknowledged that at the August 2016 follow-up visit with a nurse practitioner, Plaintiff was appropriately dressed, was pleasant and cooperative, had no hallucinations, and had logical and organized thought process, but also appeared dysphoric and anxious (Tr. 17). Contrary to Plaintiff's characterization, the ALJ did not describe all of Plaintiff's MSEs as normal but, instead, recognized Plaintiff's *most recent* MSE and psychiatric examination as being normal (Tr. 17 (citing to medical records dated June 2016 through March 2017)). Finally, the ALJ

noted that the record reflected minimal treatment, to which Plaintiff had responded well (Tr. 16-17). *See* SSR 96-8p, 1996 WL 374184, at *5 (identifying effects of treatment as relevant evidence). As such, Plaintiff's argument that the ALJ did not consider all of the evidence regarding Plaintiff's mental impairments because the ALJ perceived all of Plaintiff's MSEs to be normal is unavailing.

In addition, the ALJ appropriately considered Plaintiff's impairments in combination and noted that Plaintiff did not have an impairment or "combination of impairments" that met a listing (Tr. 18). *See Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (ALJ's decision stating claimant did not have an impairment or combination of impairments that met a listed impairment constituted evidence that the ALJ considered the plaintiff's impairments). Accordingly, the ALJ properly evaluated Plaintiff's mental impairments, and the ALJ's RFC finding is supported by substantial evidence.

> **B.** Whether the ALJ properly evaluated the physical impairments when assessing the RFC

Plaintiff next asserts that the ALJ did not properly consider the effects of Plaintiff's medically determinable impairments when assessing the RFC (Doc. 24 at 35). Plaintiff bases this argument on three separate contentions. First, Plaintiff points to the fact that she was in the hospital for a total of 17 days with serious medical conditions, including a UTI impairment that the ALJ found nonsevere (Doc. 24 at 35). While not a model of clarity, Plaintiff seems to allege that the ALJ did not consider the effects of the medically determinable impairment when assessing the RFC because the ALJ said the urinary problems for which Plaintiff was in the hospital for 6 days did not have more than a

9

minimal effect on Plaintiff's ability to work (Tr. 16). In an effort to show the ALJ's conclusion was erroneous, Plaintiff cites to the VE's testimony that any absences more than a day a month would adversely affect a person's ability to keep a job (Tr. 54). Plaintiff also seems to be arguing that the total number of days of hospitalization proves that the ALJ did not consider the combination of impairments, but instead considered the effect of each one singly (Doc. 24 at 36). Plaintiff, however, fails to show any of her conditions require regular hospitalization during a twelve-month period or longer. *See* 20 C.F.R. § 404.1505(a); *Barnhart v. Walton*, 535 U.S. 212, 217-18 (2002) (holding a claimant's inability to work must last for a continuous period of at least twelve months). For example, Plaintiff was hospitalized in January 2016 and January 2017 for pneumonia; several times in January 2016, for complaining of right groin pain[4]; and in October 2016 due to urinary symptoms, which the ALJ noted were treated with medication and for which Plaintiff did not report ongoing symptoms at her hearing (Tr. 16, 35-50, 1043).

Moreover, as discussed above, the ALJ appropriately considered Plaintiff's impairments in combination. An ALJ can satisfy her duty to consider the impairments in combination and determine whether the combined impairments render the claimant disabled by stating that she considered whether the claimant suffered from any impairment or combination of impairments. *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991). Here, the ALJ specifically discussed evidence pertaining to Plaintiff's vision complaints, reported diarrhea, urinary incontinence, mental

---

[4] On examination, Plaintiff had full range of motion in the back, normal sensory exam, normal strength, and at two of the three visits, walked without difficulty.

impairments, GERD, spine disorders, shoulder pain, right hip osteoarthritis, fibromyalgia, COPD, pneumonia, emphysema, diabetes, hypertension, and obesity (Tr. 15-16, 20-22). In addition, the ALJ noted Plaintiff did not have an impairment or "combination of impairments" that met a listing (Tr. 18) and explained that her RFC assessment took into account all impairments, including impairments she found were not severe (Tr. 13-14). The ALJ also considered the "entire record" and "all symptoms" to the extent they were consistent with the record evidence (Tr. 18-19). *See Nichols v. Comm'r, Soc. Sec. Admin.*, 679 F. App'x 792, 797 (11th Cir. 2017) (rejecting argument that an ALJ did not consider a claimant's combined effect of impairments where the ALJ stated that he considered severe and nonsevere impairments in combination and that he considered the entire record, all symptoms, and the extent to which those symptoms were consistent with the evidence).

Second, Plaintiff argues that the ALJ minimized Plaintiff's fibromyalgia because the ALJ said Plaintiff did not seek specific treatment for fibromyalgia and had not been seen by a rheumatologist (Doc. 24 at 36). Plaintiff asserts that, contrary to the ALJ's findings, she was treated and prescribed medication for fibromyalgia every time she went to the health department, and, moreover, she cannot be denied a finding of disability based on not seeing a rheumatologist due to her lack of funds or insurance. The ALJ's discussion regarding Plaintiff not seeking special treatment for her fibromyalgia or seeing a rheumatologist, however, was in the context of whether Plaintiff met the criteria for establishing fibromyalgia set forth in Social Security Ruling 12-2p (Tr. 21). *See* SSR 12-2p, 2012 WL 3104869, at *2-3 (identifying the criteria required for an adjudicator to find

a claimant has fibromyalgia). The ALJ found Plaintiff did not meet the criteria for fibromyalgia, which Plaintiff does not challenge. Regardless, the ALJ concluded that Plaintiff had fibromyalgia and identified it as one of her severe impairments (Tr. 14, 21). Moreover, the ALJ's finding of no disability was not primarily based on the fact that Plaintiff did not see a specialist for fibromyalgia. Instead, it was primarily based on the lack of objective findings showing Plaintiff was more limited than stated in the RFC. *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (holding ALJ was not required to consider whether claimant was financially able to afford treatment when determination claimant was not disabled was not significantly based on a finding of non-compliance).

Here, Plaintiff does not explain how her fibromyalgia caused greater limitations than the ALJ's RFC finding, and the mere existence of a diagnosis does not establish work-related limitations. *See Moore*, 405 F.3d at 1213 n.6; *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005); *see also Smith v. Comm'r of Soc. Sec.*, 501 F. App'x 875, 879 (11th Cir. 2012) (upholding ALJ's finding that claimant's diagnoses of anxiety and depression were not severe impairments, where nothing in the record indicated that these impairments could be expected to interfere with her ability to work). It is the functional limitations caused by a plaintiff's impairment that affect the ability to work, not the impairment itself. *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (noting that the severity of impairments must be measured in terms of their effect on the ability to work, not from purely medical standards of bodily perfection or normality).

Finally, Plaintiff asserts that "[t]he ALJ seemed to be engrossed and absorbed by orthopedic impairments to the exclusion of other impairments. [The ALJ] said that

Plaintiff's treatment was not regarding disabling impairments because the primary care physician, in her opinion, was focused on non-orthopedic impairments [Tr. 20]" (Doc. 24 at 37). Like most of Plaintiff's contentions, there is no supporting authority cited. *See Outlaw v. Barnhart*, 197 Fed. App'x 825, 828 n.3 (11th Cir. 2006) (noting that an issue was waived because the claimant did not elaborate on the claim or provide citation to authority about the claim); *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citations to authorities, are generally deemed to be waived."). In addition, the Court disagrees with Plaintiff's characterization of the ALJ focusing on orthopedic impairments to the exclusion of others. The ALJ discussed in detail Plaintiff's fibromyalgia, respiratory impairment, diabetes mellitus, hypertension, and obesity as well as vision complaints, reported diarrhea, urinary incontinence, mental impairments, and GERD (Tr. 15-16, 20-22). Accordingly, the ALJ properly evaluated Plaintiff's physical impairments, and the ALJ's RFC finding is supported by substantial evidence.

**C.** Whether the ALJ properly evaluated the medical opinions

Plaintiff argues that the ALJ failed to properly consider some of the opinions of Dr. Powers; specifically, those concerning specific limitations on required breaks and anticipated absences[5] (Doc. 24 at 43). Plaintiff does not challenge the weight given to Dr.

---

[5] On July 25, 2011, Dr. Powers wrote a medical excuse for Plaintiff's work that, because of Plaintiff's chronic low back pain, shoulder pain, neck pain, headaches, and upper and lower extremity radiculopathy, she would be incapacitated 3-4 times per month for 1-2 days at a time (Tr. 299-300). Dr. Powers repeated those limitations on February 8, 2012, August 31, 2012, and February 25, 2013 (Tr. 302-03, 305-06, 308-09). On March 1, 2013, Dr. Powers added that, due to urinary incontinence and type II diabetes, Plaintiff would need 5-10 minute breaks every 2 hours (Tr. 310-11). On April 26, 2013, Dr. Powers

Powers' opinions and acknowledges that the limitations on absences were not part of Dr. Powers' medical notes (Doc. 24 at 44). Plaintiff contends, however, that the ALJ's failure to address those break and anticipated absence limitations requires reversal.

Contrary to Plaintiff's contention, the ALJ explicitly considered Dr. Powers' opinions regarding breaks and anticipated absences from work between July 2011 and June 2013, and properly afforded the opinions little weight explaining they were all offered more than eight months prior to Plaintiff's alleged onset date of November 21, 2014 (Tr. 22, 178, 299-300, 302-03, 305-06, 308-09, 317-18). *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance."). The Court notes that Plaintiff worked during this time period through the latter part of 2013 and again in 2014 (Tr. 35, 191, 211). The ALJ explained the weight assigned to these opinions was based, in part, on the fact that "Dr. Powers appeared to have relied heavily on the claimant's report of symptoms since the record does not … explain the requested diabetic breaks" (Tr. 22). *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (upholding ALJ's determination to discredit a source's opinion because it was based primarily on subjective complaints unsupported by medical evidence); *see also* 20 C.F.R. § 404.1529(b) (stating a claimant's symptoms "will not be found to affect [the claimant's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present"); SSR 96-4p, 1996 WL 362210, at *34489 (reiterating the need

---

repeated the limitations of being incapacitated 3-4 times per month for 1-2 days at a time (Tr. 317-18), which he then increased on June 17, 2013, to 4 times per month for 2-3 consecutive days (Tr. 318).

for medical evidence of a medically determinable physical or mental impairment and stating "under no circumstances may the existence of an impairment be established on the basis of symptoms alone").

Moreover, while the ALJ's RFC determination must be supported by substantial evidence, the assessment of a claimant's RFC and corresponding limitations are "within the province of the ALJ, not a doctor." *Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010); *see also Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."). As such, Dr. Powers' opinions regarding Plaintiff's work limitations invade the ALJ's province. Here, the ALJ articulated specific reasons for the weight afforded Dr. Powers' opinions, and substantial evidence supports the ALJ's decision to give little weight to Dr. Powers' opinions that pre-date Plaintiff's alleged onset date.

Accordingly, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

**ORDERED** in Tampa, Florida, on this 20th day of September, 2019.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE